IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRI SCHOONMAKER,                         CV 05-1182-TC

        Plaintiff,                    FINDINGS AND
                                            RECOMMENDATION
  v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

        Defendant.

COFFIN, Magistrate Judge:

### BACKGROUND

Plaintiff, Sherri E. Schoonmaker, brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income(SSI) benefits, based on disability, under Title XVI of the Social Security Act (the Act). 42 U.S.C. §§ 405(g), 1383(c)(3).

1 - FINDINGS AND RECOMMENDATION

Schoonmaker alleges disability beginning December 2000 based on a combination of alleged impairments, including: sleep apnea; lupus; migraines; numbness, pain, weakness and swelling of the hands; memory problems; pain in all major joint areas of the body; fatigue; lupus attacks that occur two times per month and last for roughly 3-4 days each time; skin sensitivity to light that produces pain to the skin area exposed; dizziness, nausea; Raynaud's syndrome; and symptoms of bilateral carpal tunnel syndrome.

Schoonmaker is considered a younger individual under the regulations. She was born in 1976. She has a college degree, but no past relevant past work experience.

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform. Id.; see also 20 C.F.R. § 404.1560(c)(2).

Here, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 17, 28; see 20 C.F.R. § 405.1520(b)

At step two, the ALJ found that plaintiff had the following severe impairments: obesity; sleep apnea; and contraction headaches. He also found a combination of non-severe impairments, which, taken together, constituted a severe impairment.

At step three, the ALJ determined that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 22, 28; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ determined that plaintiff retained the following residual functional capacity (RFC): able to lift 20 pounds occasionally, 10 pounds frequently, sit, stand, walk about 6 hours per day, no limitations of fine or gross manipulative abilities, and no visual or environmental limitations.

At step four the ALJ found that plaintiff had no past relevant work.

At step five, relying on vocational expert testimony, the ALJ found that plaintiff could perform other work in the national economy existing in significant numbers: automatic developer-

3 - FINDINGS AND RECOMMENDATION

photography; marking clerk; and charge account clerk. Thus, the ALJ found plaintiff not disabled at step 5.

As discussed below, the Commissioner's decision should be affirmed and this case should be dismissed.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v.</u>

4 - FINDINGS AND RECOMMENDATION

Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

Plaintiff primarily contends that the ALJ improperly determined plaintiff's RFC, improperly rejected opinions from non-examining state physicians, failed to pose complete and proper hypotheticals to the vocational expert and failed to develop the record.

Many of plaintiff's arguments arise from her alleged arm, hand and finger conditions. On April 6, 2001, Nancy Maloney, M.D., conducted electrodiagnostic testing of plaintiff's right hand and arm. Dr. Maloney found no indication of bilateral distal median sensorimotor neuropathy or focal entrapment. However, she did find significant right distal ulnar sensorimotor neuropathy with focal entrapment at the cubital tunnel, with mild sensory demyelination, significant motor demyelination, and no axonal degeneration, very mild right distal ulnar sensory

5 - FINDINGS AND RECOMMENDATION

neuropathy without focal entrapment or indication of ulnar motor neuropath

On July 26, 2001, Steven Ireland, M.D., performed a neurological examination. In his report, he noted he reviewed Dr. Maloney's records and stated that it was his understanding that Dr. Maloney's nerve conduction studies were said to demonstrate a distal ulnar neuropathy on the left and entrapment of the right ulnar nerve at the level of the cubital tunnel. Tr. 391. In his exam, Dr. Ireland noted that he could not detect a definite Tinel's sign over the cubital tunnel on either side. There was a mild Tinel's sign at the wrist bilaterally. Phalen's maneuver was negative bilaterally. Ulnar flexon was negative. Strength testing was normal in both upper extremities. There was no evidence of atrophy or fasciculation. Sensory examination was normal. Sensory and motor nerve conduction were performed for the median and ulnar nerves bilaterally. These studies were within normal limits with the exception of very slight slowing of the ulnar motor conduction velocity across the elbow on the left side. On the right side the ulnar motor conduction velocity across the elbow was slower than the forearm conduction velocity which is unusual, but the degree of slowing did not meet any accepted criterion of abnormality. Needle examination was normal. Tr. 392. Dr. Ireland's impression was probable bilateral mild ulnar nerve entrapment at the elbow. There is electrophysiologic evidence for this only on the left side. Tr.

6 - FINDINGS AND RECOMMENDATION

393. "I can't help but think that the patient's problems may be at least in part related to her obesity and I have recommended that she give serious consideration to a strict weight loss program ...."  Id.  Because her nerve conduction abnormalities on the left side were very mild and because there was no evidence of denervation, Dr. Ireland recommended conservative treatment.  Id.

Because he based his opinion on his independent clinical findings, Dr. Ireland provided substantial evidence.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ relied on this evidence to determine that plaintiff experienced only mild ulnar nerve entrapment and did not have limitations of fine or gross manipulative abilities. Tr. 21, 24.  Moreover, the ALJ noted that subsequent medical reports did not identify ulnar entrapment or hand or arm limitations. Thus, the ALJ reasonably inferred that the ulnar neuropathy resolved spontaneously.  Tr. 22.  An ALJ may draw reasonable references.  See Batson v. Commissioner, 359 F.3d 1190, 1193 (9th Cir. 2004).

Plaintiff contends that the ALJ did not give due consideration to reviews of medical evidence by State Agency physician Martin Kehrli, M.D.  Dr. Kehrli was involved in the review of the medical record as a whole on two different occasions - six months before Dr. Ireland's exam and two years after Dr. Ireland's exam.  In January of 2001, Dr. Kehrli found

7 - FINDINGS AND RECOMMENDATION

from the records evidence of suspected Raynaud's disease, stiffness in range of motion of the fingers and cold hands. Tr. 151-152. He recommended no frequent use of hand controls and no frequent fine fingering (Tr. 151-153). "Frequent" or "frequently" is defined as one-third to two-thirds of an 8 hour workday. Tr. 150. He also recommended, by checking a box, to avoid "even moderate exposure " to extreme cold and to vibration. Tr. 154. The box recommending "avoid all exposure" to these items was not checked.

In August, 2003, Dr. Kehrli found no such evidence and did not suggest any manual limitations. Tr. 343-350.

Plaintiff contends this presents an inconsistency requiring resolution and further development of the record. On the contrary, the evidence suggests improvement and resolution of the impairment. Dr. Ireland examined plaintiff on July 26, 2001, six months after the first State Agency record review. Dr. Ireland did not report evidence of Raynaud's disease and found only mild ulnar neuropathy, for which he recommended weight loss and conservative care. Tr. 393. After his report, there was no medical evidence of continued arm, hand and finger problems. Thus, Dr. Kehrli and other State Agency physicians did not list any related, continuing limitations at the later date. As previously noted, the ALJ reasonably inferred that the ulnar neuropathy resolved spontaneously. Tr. 22.

8 - FINDINGS AND RECOMMENDATION

Even if the limitations the State Agency physicians endorsed in their first review were credited, the effect would be inconsequential as the jobs the ALJ determined plaintiff could perform do not include frequent use of hand controls or frequent need for fine fingering or moderate exposure to extreme cold or moderate exposure to vibration. See plaintiff's brief at p.p. 13-14 setting forth job descriptions. Such is especially true for the charge account clerk position. Id. Based on the foregoing, further consideration and development of the record is not required on this issue.

Plaintiff also contends that the ALJ should have further developed the record on impairments such as sleep apnea, fatigue, daytime sleepiness, and bilateral mild ulnar nerve entrapment. However, the nerve entrapment is addressed above, the ALJ found the sleep apnea and some of the fatigue and daytime sleepiness to be resolved with CPAP treatment. TR 21. Impairments relieved with treatment cannot form the basis of a disability claim. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999). Fatigue was also addressed at TR 23.

Plaintiff contends that the ALJ should have further developed the record on other impairments that the ALJ found to be nonsevere separately, but found collectively severe. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow

9 - FINDINGS AND RECOMMENDATION

for proper evaluation of the evidence.  <u>Mayes v. Massanari</u>, 276 F.3d 454, 459-460 (9th Cir. 2001).  There is not ambiguous evidence here or an inadequate record to allow for proper evaluation of the evidence.   Moreover, plaintiff does not put forth a theory on how the impairments she has listed in her brief on this matter disabled her and plaintiff completed her bachelor's degree while claiming she could not work.  In addition, the ALJ noted the degenerative joint disease of the knees to be very mild, TR. 20-21;  the fibromyalgia to not be "well confirmed medically" and to have a complete absence of underlying physical diagnosis" and to be asymptomatic, TR. 22, 23;  and that the series of opthalmological studies between February of 2001 and March of 2002 arising from the  asserted visual blurring were generally unremarkable. TR. 21.  Evidence from the medical record provides a sufficient basis for the ALJ decision.

 Based on the entirety of the above,  the ALJ properly determined plaintiff's RFC and posed complete  and proper hypotheticals to the vocational expert.

 All of plaintiff's other arguments have been considered and found unpersuasive.

## RECOMMENDATION

Based on the foregoing, the Commissioner's decision should be AFFIRMED, and a final judgment should ultimately be entered dismissing this case with prejudice.

DATED this 27 day of July, 2005.

_____
Thomas Coffin
United States Magistrate Judge